**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JANE DOE,<br><br>           **Plaintiff,**<br><br>     v.<br><br>**BROOKS AUTOMATION US, LLC,**<br><br>           **Defendant.** | **Case No. 3:24-CV-1284**<br><br>**Judge Richardson**<br><br>**Magistrate Judge Newbern** |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7.01 of the United States District Court for the Middle District of Tennessee, Defendant Brooks Automation US, LLC (hereinafter "Defendant" or "Brooks") through undersigned counsel, submits this Memorandum in support of its Motion to Dismiss Plaintiff Jane Doe's (hereinafter "Plaintiff") Complaint with prejudice.

## INTRODUCTION

Plaintiff brings this action to recover damages and seek injunctive relief for: (1) discrimination based on her gender, national origin, disability, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA")[1] (Count I); and (2) defamation (Count II). This Complaint should be dismissed because even taking Plaintiff's allegations as true, which they are not, Plaintiff waived her right to pursue legal action and seek damages pertaining to her discrimination and retaliation claims arising from her

---

[1] While not explicitly referenced in Plaintiff's narrative response under Count I, in Plaintiff's pro se submission of the "Complaint for Employment Discrimination" form, she also references "Massachusetts General Laws Chapter 149, Section 52C." Regardless of whether Plaintiff brings her claims under Title VII, the ADA, or any Massachusetts state law, her Complaint must still be dismissed for the reasons articulated herein.

employment with Brooks when she signed a Severance Agreement and Release on November 19, 2022. Further, Plaintiff's discrimination and retaliation claims are time barred as Plaintiff failed to file a Charge of Discrimination with the EEOC or another state agency within the statutory time frame. With respect to Plaintiff's defamation claim, Plaintiff alleges Brooks made false statements to the EEOC when responding to Plaintiff's Charge of Discrimination. Accordingly, an absolute litigation privilege protects Brooks' statements as they were made in a quasi-judicial proceeding. Likewise, Plaintiff has not articulated any facts demonstrating Brooks published the statements in such a way that caused her any specific harm.

For all these reasons set forth more fully below, Brooks respectfully requests the Court dismiss Plaintiff's complaint in its entirety with prejudice.

## STATEMENT OF RELEVANT FACTS[2]

Plaintiff began working for Brooks as a Global Director in September 2021. (Compl. 6, ECF No.). Plaintiff alleges during her employment she achieved significant accomplishments, accolades, and appreciation for her exemplary performance. (*Id*.). In May 2022, Plaintiff claims that after Brooks hired Massimo Trambaioli, she began experiencing targeted harassment and discrimination based on her gender, national origin,[3] and physical disability. (*Id*. at 7). With respect to her disability discrimination claim, Plaintiff contends that she has an unspecified physical disability and because of this disability was excluded from a group photo in October 2022. (*Id*. at 8).

---

[2] While Brooks denies the accuracy of any facts alleged in the Complaint, even if accepted as true, Plaintiff's allegations are legally insufficient to establish a claim and/or were previously waived pursuant to her voluntary agreement to the terms contained in her Severance Agreement and Release. However, for purposes of this Motion only, Defendant assumes the factual accuracy of the allegations in Plaintiff's Complaint, as required by Rule 12(b)(6).
[3] Plaintiff does not make clear the basis for her national origin claim as neither her national origin nor that of any other individual is identified in the Complaint. Further, Plaintiff does not identify any discrete acts which she contends occurred because of her national origin. Again, this oversight is immaterial as Plaintiff indisputably waived any claims pertaining to her employment with Brooks, which explicitly included claims of national origin discrimination.

2

With respect to her gender discrimination claim, Plaintiff contends that there was "gender bias within the predominately male IT" team and that despite her recommending a qualified "local female candidate," her supervisor, Firas Almahamid, chose to hire a male referral for a vacancy. (*Id*. at 7). Plaintiff also contends that male candidates with less experience and qualifications were assigned to roles with higher salaries. (*Id*. at 9).

Regarding Plaintiff's retaliation claims, Plaintiff alleges that at some unspecified time she engaged in protected activities, which included reporting discrimination and harassment to both her manager, Mr. Almahamid, her co-worker Mr. Trambaioli, and HR. (*Id*. at 6-7). Thereafter, Plaintiff claims her role at Brooks changed and she experienced escalated efforts of retaliation and harassment, which included "fabrications of performance deficiencies, manipulation of personnel records, and defamatory statements." (*Id*. at 6). Plaintiff also claims Brooks further retaliated against her for engaging in protected activity by reassigning her duties to Mr. Trambaioli, excluding her from key meetings, and halting her green card process while sponsoring Mr. Trambaioli's work authorization for the United States. (*Id*. at 7-8).

After attempting to address the ongoing discrimination and harassment with HR and senior leaders, on October 31, 2022, Plaintiff alleges she contacted Brooks' CEO via email in a final attempt to resolve her complaints. (*Id*. at 7-8). Later that day, HR, along with her supervisor Mr. Almahamid informed Plaintiff that her allegations of retaliation, harassment, and discrimination, were unsubstantiated and that she was being placed on "garden leave" until March 1, 2023. (*Id*. at 8). Plaintiff contends that she was "coerced into accepting the terms to avoid forfeiting her annual bonus and risking her work status." (*Id*. at 8). Indeed, Plaintiff was presented with a Severance Agreement and Release on October 31, 2022, and she signed the Agreement on

November 19, 2022.  (*See* Ex. 1, Severance Agreement and Release).[4]  By signing the Agreement,

Plaintiff was allowed to remain on Brooks' employee roster and receive her regular pay and all

benefits for a twelve-week period, despite not reporting to work.  (*Id*.).  In exchange, she released

Brooks from any type of claim arising from conduct that occurred any time up through November

19, 2022.  (*Id*.).  As is relevant to the instant Complaint, Plaintiff released

> any waivable claims [she] [had] against the Company Releasees based on conduct
> that occurred any time in the past and up to and through the date [she] sign[ed] this
> Agreement that arises from any federal, state, or local law, regulation, code or
> constitution dealing with either employment, employment benefits or employment
> discrimination. By way of example, this release includes the release of claims
> against the Company Releasees under the laws or regulations concerning
> discrimination on the basis of race, color, creed, religion, age, sex, sex harassment,
> sexual orientation, gender identity, national origin, ancestry, genetic carrier status,
> handicap or disability, veteran status, any military service or application for military
> service, or any other category protected under federal, state or local law.  This
> release also includes any claim [she] may have against the Company Releasees for
> breach of contract, whether oral or written, express or implied; any tort claims (such
> as claims for wrongful discharge, tortious interference with advantageous relations,
> misrepresentation and defamation); any claims for equity or employee benefits for
> any other kind; or any other legally waivable statutory and/or common law claims.

(*Id*.).

More than a year after Plaintiff's employment with Brooks ended, on March 10, 2024,

Plaintiff filed a Charge of Discrimination with the EEOC.  (*See* Compl. 11).  Plaintiff now claims

that Brooks continued its retaliatory campaign against her through its alleged defamatory

submissions to the EEOC, which she contends further damaged her reputation and caused

---

[4] While courts are generally prohibited from considering documents outside of the pleadings when ruling upon a
motion to dismiss, "the court may . . . consider other materials that are integral to the complaint, are public records,
or are otherwise appropriate for the taking of judicial notice." *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 822
(M.D. Tenn. 2014) (quoting *Wyser–Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir.2005)).  Any
"[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's
complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999),
*abrogated on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  As Plaintiff references her severance
agreement and the terms therein throughout the complaint, and the substance of such is integral to the Court's
adjudication of the instant matter, it is proper for the Court to consider this document as central to and part of Plaintiff's
Complaint at the Motion to Dismiss stage.

4

emotional distress.  (*Id*. at 7).  Specifically, Plaintiff alleges that Brooks submitted knowingly false statements to the EEOC related to purported performance deficiencies, misconduct, and unsupported allegations of poor judgment.  (*Id*. at 10).  Plaintiff further claims that in Brooks' submissions to the EEOC, it falsely reported an employe count of fewer than 15 employees in an effort to evade EEOC oversight.  (*Id*. at 8).  Plaintiff contends that she learned of Brooks' statements and alleged false representations through the EEOC process and her subsequent Freedom of Information Act ("FOIA") request, a portion of which she attached to her Complaint. (*Id*. at 5, 8, Ex. G).

## STANDARD OF REVIEW

A civil action is subject to dismissal if it fails "to state a claim for which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure therefore allows a "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the [C]omplaint is true."  *See Diggs v. U.S. Dep't of Air Force*, Case No.: 3:20-cv-16, 2021 U.S. Dist. LEXIS 50062, at *8 (M.D. Tenn. Feb. 23, 2021) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)); *see also Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).

"A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005) (citing *Gao v Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999)).  Consequently, a court must construe the complaint in a light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences for the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  A court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

5

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Hence, a court must grant a motion to dismiss under Rule 12(b)(6) if there is no law to support a claim, the facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff has no claim.  *See Kinzer v. Metro. Gov't of Nashville*, 451 F. Supp. 2d 931, 932 (M.D. Tenn. 2006).

Additionally, while courts hold *pro se* complaints to a somewhat less stringent standard than formal pleadings drafted by lawyers, they are not absolved from complying with the Federal Rules of Civil Procedure.  *Randolph v. Unicco Integrated Facs. Servs. Cargill*, No. 10-2919-STA, 2012 WL 1022264, at *2 n.3 (W.D. Tenn., Mar. 26, 2012) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  In construing *pro se* complaints, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  *Wells*, 891 F.2d at 594.  Nor should the court act as the *pro se* plaintiff's advocate and develop claims that the plaintiff failed to raise on the face of the complaint.  *See* R. & R. at 7, *Harris v. Such*, Case No. 3:22-cv-00738 (M.D. Tenn. June 2, 2023) ("The Court is not required to create claims that are not alleged, because to do so would require the courts to explore exhaustively all potential claims of a *pro se* plaintiff and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."'") (internal citations omitted); *see also Young Bok Song v. Gipson*, 423 Fed. Appx. 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" or to "advis[e] litigants as to what legal theories they should pursue").  Consequently, a *pro se* plaintiff must still allege facts sufficient to support a claim, even under a liberal construction of interpreting the allegations.  *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

6

## LEGAL ARGUMENT

**A.  Plaintiff Waived All Claims Related to Her Employment with Brooks Through November 19, 2022**

Plaintiff's Complaint makes clear that the crux of her claims center around events that occurred during her active employment at Brooks[5]—all of which Plaintiff indisputably waived when she voluntarily signed the Severance Agreement and Release.  (*See* Ex. 1).  The terms of the Agreement explicitly state the following:

> [B]y signing this Agreement, you are agreeing to forever waive, release, and discharge the Company Releasees from any type of claim arising from conduct that occurred any time in the past and up to and through the date you sign this document….
>
> This release includes, but is not limited to, any waivable claims you have against the Company Releasees based on conduct that occurred any time in the past and up to and through the date you sign this Agreement that arises from any federal, state, or local law, regulation, code or constitution dealing with either employment, employment benefits or employment discrimination. By way of example, this release includes the release of claims against the Company Releasees under the laws or regulations concerning discrimination on the basis of race, color, creed, religion, age, sex, sex harassment, sexual orientation, gender identity, national origin, ancestry, genetic carrier status, handicap or disability, veteran status, any military service or application for military service, or any other category protected under federal, state or local law.  This release also includes any claim you may have against the Company Releasees for breach of contract, whether oral or written, express or implied; any tort claims (such as claims for wrongful discharge, tortious interference with advantageous relations, misrepresentation and defamation); any claims for equity or employee benefits for any other kind; or any other legally waivable statutory and/or common law claims.

(*Id* at 3).  The Agreement further states that "[f]or avoidance of doubt by signing this Agreement" Plaintiff agreed to not bring any waivable claims under, *inter alia*, Title VII, the ADA, and the Massachusetts Fair Employment Practices Law.  (*See id*.).  In exchange for, and in consideration of Plaintiff's full execution of the Agreement, to include the waiving of her claims, Plaintiff was

---

[5]Again, Plaintiff's substantive employment with Brooks ended on October 31, 2022; however, she was placed on "garden leave" for the period of November 1, 2022, through March 1, 2023, during which time she did not perform any work for Brooks.

placed on "garden leave" where despite not reporting to work, she remained on Brooks' payroll, receiving her full-time base salary as well as benefits for the period of November 1, 2022, through March 1, 2023. (*Id.* at 1-2). Plaintiff signed the Severance Agreement and Release on November 19, 2022, and remained on "garden leave" collecting her full-time base pay and benefits for twelve weeks.

Except for Plaintiff's allegation that Brooks continued to retaliate against her with respect to its alleged defamatory statements in its EEOC filings, all of the complained of actions occurred during Plaintiff's employment, and indisputably before November 19, 2022. Specifically, the majority of Plaintiff's complained of interactions under Count I occurred with Mr. Almahamid and Mr. Trambiaoli, as part of her performing her work duties. (*See* Compl. 7-9).[6] There is no evidence, and Plaintiff does not allege that she had further contact with either individual or suffered further discrimination[7] after being placed on "garden leave." Indeed, the explicit text of Plaintiff's Severance Agreement and Release states that during the Garden Leave Period she would "not report to work" and would only be responsible for "reporting and responding to Emma Woodthorpe as required during the Garden Leave." (*See* Ex. 1 at 2). None of Plaintiff's allegations address ongoing interactions with Ms. Woodthorpe or otherwise implicate interactions that occurred between November 1, 2022, and March 1, 2023. (*See* Compl. *generally*).

Importantly, Plaintiff provides no evidence or argument which might otherwise indicate that the Agreement does not cover the claims asserted under Count I. Instead, Plaintiff makes a

---

[6] While Plaintiff's narrative response indicates that Count I is based on her Title VII and ADA discrimination and retaliation claims, her description of the basis of those claims also appears to include a potential breach of contract claim pertaining to her equity compensation and/or green card sponsorship. (Compl. 7-9). Regardless of whether Plaintiff is claiming a separate cause of action for breach of contract, distinct from employment discrimination, the claims are still waived as they indisputably occurred prior to November 19, 2022. (Compl. 9).

[7] Again, Plaintiff's only post-separation claims relate to Count II—the alleged defamatory statements made to the EEOC in further retaliation for her engaging in protected activity. As discussed more fully below, these claims must also be dismissed even though not covered by the Severance Agreement and Release.

bare assertion that she signed the Agreement under duress. (*See id*. at 7-8). Specifically, Plaintiff claims she was "coerced into accepting the terms to avoid forfeiting her annual bonus and risking her work visa status . . . [w]ith her employment conditions controlled by HR contact, David Brinkman (*sic*)." (*Id*.). Plaintiff's allegations, even if true, simply do not rise to the level necessary to demonstrate that her agreement to the terms contained in the Agreement were anything but voluntary.

A "totality of the circumstances" test determines whether an employee has "knowingly and voluntarily executed" a release of her claims and thus may not rescind it on duress grounds. *See Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995). The test requires the Court to examine the following: "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Id*. In looking at each of these factors, along with the totality of all circumstances surrounding Plaintiff's separation from Brooks, as is alleged in the Complaint, Plaintiff's allegations of duress indisputably fail.

First, nothing about Plaintiff's background suggests she did not have the capacity or background to grasp the meaning of the Agreement, and Plaintiff does not make such a claim. (*See Compl.*). Instead, Plaintiff's own allegations confirm she was a highly compensated member of senior management involved in high level decision making. (Compl. 6-8). Thus, it is appropriate to conclude that with the training and background necessary to perform in such a sophisticated role, Plaintiff comprehended the meaning and effect of terms laid out in the Agreement she signed.

Second, Plaintiff was given 21-days to consider the Agreement and seven days to change her mind after signing it. (*See* Ex. 1 at 4, 7). These timelines gave Plaintiff ample opportunity to

consider the terms proposed.  *See Gascho v. Scheurer Hospital*, 400 F. App'x 978, 982 (6th Cir. 2010) (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (finding an agreement enforceable when employee had three days to withdraw her consent after signing it); *Adams*, 67 F.3d at 581 (finding an agreement enforceable when employee had five days to consider whether to waive Title VII and ADEA claims)).  A related federal statute suggests a similar conclusion.  While Title VII does not contain a waiver-of-claims provision, the Age Discrimination in Employment Act does.  It says that, to establish a knowing and voluntary waiver of claims under the Act, the individual must be "given a period of at least 21 days within which to consider the agreement" and a seven-day revocation period after signing it. 29 U.S.C. § 626(f)(1).  This congressional policy in a related civil rights statute bolsters the conclusion that a twenty-one-day consideration period and a seven-day reconsideration period suffices to establish a legitimate waiver.  *See Gascho*, 400 F. App'x at 982 (6th Cir. 2010).  Of note, Plaintiff took 19 days to consider the Agreement and never made an effort to revoke her agreement to its terms after signing. (*See* Ex. 1)

Third, the timelines provided to Plaintiff gave her ample opportunity to seek an attorney's advice.  Indeed, Plaintiff had access to counsel when she was presented with the Agreement and communicated to the EEOC that she was in contact with that counsel about these matters between August 2022 through December 2022.  (*See* Ex. 2, Plaintiff's Email Communication to EEOC - FOIA Excerpt).[8]  Whether Plaintiff had her counsel read the actual terms of the Agreement is irrelevant as the inquiry for the courts is whether the time provided to review the Agreement was sufficient, not whether she actually used that time to consult with an attorney.  *See Gascho*, 400 F.

---

[8] Again, consideration of the additional FOIA documents at the Motion to Dismiss stage is proper as Plaintiff has referenced and attached incomplete portions of the EEOC file that she received as part of her FOIA request to her Complaint and has made such information integral to her claims.

App'x at 982 ("The question at any rate goes to the amount of time given to sign the agreement, not to whether the claimant properly used the time to speak to the right kind of attorney.").

Fourth, with respect to the clarity of waiver, the terms of the Agreement leave no room for doubt about its meaning and the claims that were being waived. It informs Plaintiff that "you are agreeing to forever waive, release, and discharge the Company Releasees from any type of claim arising from conduct that occurred any time in the past and up to and through the date you sign this document . . . ." (*See* Ex.1 at 3). It also explicitly states that "[b]y way of example, this release includes the release of claims under the laws or regulations concerning discrimination on the basis of race, color, creed, religion, age, sex, sex harassment, sexual orientation, gender identity, national origin, ancestry, genetic carrier status, handicap or disability . . . or any other category protected under federal, state or local law." (*See id*.). The Agreement further states that "[f]or avoidance of doubt by signing this Agreement" Plaintiff agreed to not bring any waivable claims under, *inter alia*, Title VII, the ADA, and the Massachusetts Fair Employment Practices Law. (*See id*.). One does not need a law degree to grasp the import of those terms, repeated multiple times throughout the Agreement. By signing the Agreement and accepting the benefits offered to her, which she did over the course of 12-weeks, Plaintiff knew that she was waiving her right to any Title VII, ADA, or state equivalent claims that she had or might have against Brooks through November 19, 2022.[9]

Finally, Plaintiff received fair consideration. Specifically, Plaintiff received an additional 12-weeks of full-pay and benefits, which she was otherwise not entitled to absent signing the Agreement. (*See* Ex. 1). Plaintiff has not alleged that this consideration was unfair or otherwise

---

[9] As noted above, to the extent Plaintiff is also alleging a breach of contract claim, Plaintiff was also on notice that such claims were included in the waiver. (*See* Ex. 1 at 3)("This release also includes any claim you may have against the Company Releasees for breach of contract, whether oral or written, express or implied[.]").

a disproportionate exchange of value and nowhere challenges the overall fairness of the benefits Brooks offered, and paid, to her. (*See generally* Compl.).

Again, Plaintiff's only argument in support of her alleged coercion theory is merely the fact that she was faced with a choice that had financial implications, and that Brooks controlled the terms and conditions of her employment. (*Id*. at 7-8). However, Plaintiff's belief that she had no choice to sign the Agreement, in view of the potential economic ramifications and HR's control of her employment conditions, is insufficient. All bargaining, whether to buy a house, to take a job or to settle a dispute, comes with implicit economic and psychological pressures. *See Gascho*, 400 F. App'x at 983. "As the Restatement reminds us, "'[a]n ordinary offer to make a contract commonly involves an implied threat by one party, the offeror, not to make the contract unless his terms are accepted by the other party, the offeree.'" *Id*. (citing Restatement (Second) of Contracts § 176 cmt. a (2010)). A risk of economic hardship in the absence of agreeing to an offer, does not by itself state a claim, because this kind of threat is "an accepted part of the bargaining process." Restatement (Second) of Contracts § 176 cmt. a. That is particularly so here, given that Plaintiff makes no argument that the settlement produced a disproportionate exchange of benefits. A contrary view, moreover, "would invalidate most, if not all, releases of claims in agreements conferring severance benefits on employees." *Gascho*, 400 F. App'x at 983 (citing *Dorn v. Gen. Motors Corp.*, 131 Fed. Appx. 462, 468 (6th Cir. 2005); *see VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 123 (2d Cir. 2001) ("Because an element of economic duress is thus present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases.")).

As Plaintiff has failed to plead facts which would call into question the voluntariness of her agreement to the terms of the Agreement in which she waived the claims brought in this

12

Complaint, Plaintiff's claims of discrimination, harassment and retaliation that occurred during her employment – all under Count I – should be dismissed with prejudice.

**B.     Even Assuming Plaintiff's Has Not Waived Her Claims, Plaintiff's Claims Are Time Barred as She Failed to *Timely* Exhaust Her Administrative Remedies**

Even assuming Plaintiff did not waive her claims when signing the Severance Agreement and Release, Plaintiff's allegations regarding her employment with Brooks, which officially[10] ended on March 1, 2023, are untimely as she did not file her Charge of Discrimination until March 10, 2024, well outside the timeframe to file an administrative charge. (*See* Compl. 11).

It is well settled that, "[a]s a prerequisite to bringing suit under Title VII, a claimant must exhaust his or her administrative remedies."[11] *Scott v. Eastman Chem. Co*., 275 Fed. Appx. 466, 470 (6th Cir. 2008) (citing *Weigel v. Baptist Hosp. of E. Tenn*., 302 F.3d 367, 379 (6th Cir. 2002)). A claimant exhausts his or her administrative remedies by filing a charge with the EEOC. *Id*. Although not jurisdictional requirements, exhausting administrative remedies and receiving a right-to-sue letter from the EEOC are "condition[s] precedent to bringing suit." *Rivers v. Barberton Bd. of Educ*., 143 F.3d 1029, 1031 (6th Cir. 1998). A plaintiff who has failed to do so has failed to state a claim. *See McGhee v. Disney Store*, 53 Fed. Appx. 751, 752 (6th Cir. 2002) (explaining that administrative exhaustion must be alleged in the complaint to avoid dismissal); *see also Lockett v. Potter*, 259 Fed. Appx. 784, 786 (6th Cir. 2008) (affirming dismissal of an unexhausted Title VII suit for failure to state a claim); *Brown v. Abbott Labs.*, 90 Fed. Appx. 891, 892 (6th Cir. 2004) (affirming dismissal of a Title VII suit for failure to state a claim on exhaustion grounds).

---

[10] As noted above, Plaintiff was placed on "garden leave" for the period of October 31, 2022, so while her employment with Brooks did not officially end until March 1, 2023, her last day working was October 21, 2022.

[11] The administrative exhaustion requirements are the same for Plaintiff's ADA claims. *See* R. & R. at 6, *Purvis v. Clarksville Montgomery Cnty. Cmty. Action Head Start*, Civil Action No. 3:19-cv-1161 (M.D. Tenn. Aug. 20, 2020).

Not only must a plaintiff exhaust administrate remedies, but that exhaustion must also be timely, meaning that a plaintiff must file a charge of discrimination with the EEOC within the time allotted by statute. *See* Mem. Op. at 6, *Grooms v. Walden Sec.*, 3:21-cv-00363 (M.D. Tenn. Mar. 29, 2022) (citing *Williams v. Northwest Airlines, Inc*., 53 Fed. Appx. 350, 351 (6th Cir. 2002) ("Failure to timely exhaust administrative remedies [*i.e.,* a failure to file a charge within the allotted time period to begin the exhaustion process] is an appropriate basis for [Rule 12(b)(6)] dismissal of a Title VII [action].")).

Under federal and Massachusetts[12] law, an individual who believes they have been discriminated against in violation of Title VII, the ADA, or the Massachusetts Fair Employment Practices Law ("M.G.L. ch. 151B") is required to file an administrative charge within 300 days of the alleged conduct that forms the basis of their claims. 42 U.S.C. § 2000e-5(e); *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277-78 (1st Cir. 1999); M.G.L. c. 151B, § 5 ("[a]ny complaint filed pursuant to this section must be so filed within 300 days after the alleged act of discrimination."). While Plaintiff's employment with Brooks did not officially end until March 1, 2023, the complained of actions indisputably all occurred while she was still reporting to work, which stopped on October 31, 2022. Accordingly, Plaintiff was required to file an administrative charge on or before August 27, 2023—196 days before Plaintiff filed a Complaint with the EEOC. Even assuming any of Plaintiff's allegations stemmed from her time on "garden leave," which they did not, Plaintiff was still required to file an administrative charge related to any complained of actions on or before December 26, 2023—75 days before she filed.

---

[12] At all times Plaintiff was employed by Brooks, she lived and worked in Massachusetts and subsequently filed her Charge of Discrimination in Massachusetts, thus Massachusetts law would apply. Regardless of whether Massachusetts or Tennessee law applies, the timelines are the same. *See* Mem. Op. at 6, *Grooms*, 3:21-cv-00363 ("Tennessee is a deferral state; thus, an employee must file a charge with the EEOC within 300 days of an alleged unlawful employment action").

14

Plaintiff provides no justification or explanation for why she waited 496[13] days to file an administrative charge. (*See* Compl.). Rather, Plaintiff merely states that she filed her charge after the Department of Justice ("DOJ"), Immigration and Employee Rights ("IER") Division's referral to the EEOC. (*Id*. at 5). Plaintiff does not allege that she filed a complaint with the DOJ, nor does she provide any information identifying the claim the DOJ IER was investigating (*i.e.*, she does not allege that she filed a Complaint with the DOJ IER within the statutory time frame alleging national origin, gender, or disability discrimination and retaliation under Title VII or the ADA).[14] Regardless, there is no statutory authority, and Plaintiff cites none, which would toll her deadline for filing with the EEOC based on the limited facts pled.[15] Furthermore, except for Plaintiff's vague reference to a complaint of national origin discrimination (for which she provides no examples or clarifying information), Plaintiff's claims in the instant matter and those brought to the EEOC are entirely unrelated claims to any claims the IER may have jurisdiction over—*i.e.*, disability and gender discrimination claims, and retaliation related to the same. *See e.g.*, 8 U.S.C. § 1324b.[16] It is simply illogical that the filing of an entirely unrelated claim with a different agency,

---

[13] Or 375 if calculating from her final day on Brooks' employment roster.

[14] Brooks is aware that Plaintiff did in fact file a Complaint with the DOJ IER alleging Brooks violated the anti-discrimination provision of the Immigration and Nationality Act, 8 U.S.C. §1324b, by engaging in multiple acts of retaliation after she filed internal complaints of citizenship status discrimination in hiring, as it noted in responding to her EEOC Charge. (*See* Ex. 3, Brooks Position Statement) (Again, consideration of this Exhibit at the Motion to Dismiss Stage is appropriate as Plaintiff has referenced Brooks' positions statement throughout her Complaint, and indeed the very substance of the document forms the basis for Plaintiff's defamation claim, making it integral to the Complaint). There is no evidence that Plaintiff alleged national origin discrimination, gender discrimination, disability discrimination or retaliation under either Title VII or the ADA in that Complaint filed with the IER.

[15] A Memorandum of Understanding ("MOU") Between the Equal Employment Opportunity Commission and the Office of Special Counsel for Immigration Related Unfair Employment Practices states that "the agencies hereby appoint each other to act as their respective agents for the sole purpose of allowing charging parties to file charges to satisfy the statutory time limits." However, the purpose of the MOU is to ameliorate uncertainty as to the correct forum resulting from separate jurisdiction. Again, Plaintiff has not pled facts articulating that she went to DOJ, let alone that she raised the same allegations that she later brought to the EEOC sufficient to ensure she met her statutory time limits under Title VII and the ADA.

[16] Even if Plaintiff was arguing that her timeline to file with the EEOC was tolled while she separately pursued a Department of Justice Investigation, which she has not alleged in her Complaint, 8 U.S.C. § 1324b explicitly states that "[n]o charge respecting an employment practice may be filed with the Equal Employment Opportunity Commission under such title if a charge with respect to such practice based on the same set of facts has been filed under this subsection, unless the charge is dismissed under this section as being outside the scope of this section." So,

with different allegations, would indefinitely toll a plaintiff's deadline to bring claims to the EEOC. Accordingly, dismissal is warranted for the separate reason that Plaintiff's discrimination claims under Count I are time barred.

**C.    Plaintiff Cannot State a Defamation Claim Against Brooks Because the Purported Defamatory Statements Were Protected by an Absolute Privilege and She Has Not Alleged Any Specific Harm**

To prevail on a claim for defamation, a plaintiff must establish that: (1) the defendant published a statement, (2) with knowledge that the statement is false and defamatory to the plaintiff, or (3) the defendant acted "'with reckless disregard for the truth of the statement" or "with negligence in failing to ascertain the truth of the statement.'"  *Sullivan v. Baptist Mem'l Hosp*., 995 S.W.2d 569, 571-72 (Tenn. 1999).  In particular, "[p]ublication is an essential element of a defamation action without which a complaint must be dismissed."  *See Applewhite v. Memphis State Univ.*, 495 S.W.2d 190, 192-193 (Tenn. 1973)).  Likewise, "[t]o establish any type of defamation claim, whether slander or libel, the claimant must prove that the defamation resulted in injury to the person's character and reputation."  Mem. Op. at 35, *Bohler v. City of Fairview*, No. 3:17-cv-1373 (M.D. Tenn. Nov. 5, 2018).  "Damages 'cannot be presumed' but must instead be based on 'material evidence.'"  *Id*.

**1.    An Absolute Privilege Protects Brooks from Any Liability Deriving From Alleged Defamatory Statements Made to the EEOC**

Plaintiff's entire defamation claim is based on alleged false statements Brooks submitted to the EEOC when responding to Plaintiff's Charge of Discrimination. (Compl. 8, 10). Specifically, Plaintiff contends that "[i]n June 2024, Defendant submitted defamatory statements to the EEOC" and identified three alleged statements she claims were false pertaining to her

---

to the extent the claims brought to the DOJ IER were based upon the same set of facts as those she later brought to the EEOC, just under a different legal theory, that too would be improper.

performance. [17] (*Id.* at 8). Even assuming Plaintiff's claims are true, which they are not, her defamation claim must still be dismissed as the claim is barred by the litigation privilege.

Tennessee courts have recognized a "litigation privilege" that bars defamation claims for "statements made in the course of judicial proceedings which are relevant and pertinent to the issues." *Jones v. Trice*, 360 S.W.2d 48, 50 (1962); *see also Issa v. Benson*, 420 S.W.3d 23, 28 (Tenn. Ct. App. 2013). "The litigation privilege is an absolute defense, meaning that it is "'in effect, a complete immunity'" and "'is not defeated by the defendant's malice, ill-will, or improper purpose in publishing the defamatory communication.'" R. & R. at 5, *Fletcher v. Little*, No. 3:19-00588, at *5 (M.D. Tenn. Feb. 25, 2020) (quoting *Strong-Tie Co.*, *Inc. v. Stewart*, *Estes & Donnell*, 232 S.W.3d 18, 22 (Tenn. 2007)).

The policy underlying the privilege recognizes that "access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he [or she] has been wronged thereby." *Jones*, 360 S.W.2d at 51. Tennessee courts have expressly extended this absolute privilege to "communications preliminary to proposed or pending litigation." *Myers v. Pickering Firm*, *Inc.*, 959 S.W.2d 152, 161 (Tenn. Ct. App. 1997); *see also Issa*, 410 S.W.3d at 28. Further, while Tennessee does not recognize an absolute privilege for statements made in all quasi-judicial

---

[17] In addition to the alleged defamatory statements, Plaintiff also claims that Brooks made false statements to the EEOC when it submitted an incorrect number of employees, in an effort to evade the EEOC's jurisdiction. (Compl. 8). Not only is this entirely false, but it does not support her defamation claim. First, the Exhibit Plaintiff cites to in support of this contention, Exhibit G, does not identify anyone at Brooks that made a change to its employee count. Plaintiff's own Exhibit, which are incomplete FOIA records attached to her filing, clearly show that Marianne Montler, an EEOC employee, modified Respondent's employee number. (*See* Compl. Ex. G at 104). Thus, Brooks cannot be liable for statements or information it did not submit. Second, it is unclear what harm Plaintiff suffered as the EEOC did not close out her investigation or otherwise determine it lacked jurisdiction based on Brooks' employee number – instead the EEOC investigated Plaintiff's claims and Plaintiff requested a Right to Sue Letter. (*See* Compl. Ex. L at 151).

proceedings, Tennessee courts have found that the privilege extends to other judicial and quasi-judicial proceedings when before a public body, conducted by state departments and agencies, or are part of legislative and judicial proceedings or other acts of state. *See Bose v. Bea*, 947 F.3d 983 (6th Cir. 2020); *see also Lambdin Funeral Service, Inc. v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978); *Craddock v. Fedex Corp. Servs.*, No. 2:17-cv-02780-TLP-cgc, 2019 U.S. Dist. LEXIS 33872, at *7 (W.D. Tenn. Mar. 4, 2019). Specifically, as is relevant here, the privilege indisputably applies in administrative proceedings where commissioners "have powers of discretion in applying the law to the facts which are regarded as judicial, or '"quasi-judicial'" in character." *See Lambdin*, 559 S.W.2d at 792 (quoting William L. Prosser, *Law of Torts* 799 (3d ed. 1964)). Of utmost importance to the Court when deciding whether to apply privilege to potentially defamatory statements is the benefit to the public. *See Bose*, 947 F.3d at 994 ("The rationale underlying the Tennessee decisions supports limiting this privilege to statements made to public entities. Time and again, the Tennessee courts have emphasized that a benefit to the public is what drives the privilege").

Again, all three alleged defamatory statements Plaintiff identifies were made in Brooks' submission to the EEOC responding to Plaintiff's Charge of Discrimination filed with the same. (Compl. 8, 10). The identified statements include the following: (1) Brooks claiming that Plaintiff misrepresented the terms of a vendor's contract; (2) Brooks attributing a network related service interruption to her performance failures, when another director was responsible for the error; and (3) Brooks falsely accusing her of exceeding her purchase authority when Ms. Almahamid was exclusively responsible for such negotiations. (*Id.*). Again, even assuming Brooks did make each of these statements and that Plaintiff has pled sufficient facts to demonstrate that they were

knowingly false, her claim still fails as the statements were part of Brooks' required response submitted during the EEOC's investigation.

The EEOC is charged with enforcing various fair-employment statutes, including Title VII and the ADA, which includes investigating related allegations. *See* 29 C.F.R. §§ 1601.6 & 1601.15. This investigatory power extends to requesting documents and other information from parties, interviewing witnesses, and issuing subpoena's compelling the attendance of witnesses and production of evidence. 29 C.F.R. § 1601.16. The EEOC's duties also include making a determination as to whether "reasonable cause" exists to believe that an employer has committed a violation of law. *See* 29 C.F.R. § 1601.21. If the EEOC makes such a determination, it may sue on behalf of the charging party or notify the party that they themselves may sue. *Id*.

In the instant matter, Plaintiff filed a Charge with the EEOC and the EEOC required Brooks to submit a position statement responding to Plaintiff's allegations, which necessitated Brooks providing a justification for its decision to end Plaintiff's employment. It is from this position statement, and the explanation of its reasons for terminating Plaintiff's employment, that Plaintiff now seeks to make a defamation claim. Based on the fact that an aggrieved party is required to file a charge with the EEOC (or state counterpart) before suing, Plaintiff's filing with the EEOC is indisputably a necessary precursor to formal litigation. Further, the complained of statements were only made in response to Plaintiff's Charge and as part of the EEOC's investigation into those allegations. Thus, the statements were made in preliminary communications to the EEOC and are not actionable as a defamation claim.

While this Court has not previously addressed "litigation privilege" in connection with an EEOC charge, a determination that such communication is privileged is consistent with the

findings of other district courts in Tennessee,[18] which have found that EEOC actions constitute public quasi-judicial proceedings, wherein any statements made in such an action that are relevant to the charge are privileged and cannot justify a defamation claim. *Craddock*, 2019 U.S. Dist. LEXIS 33872 at \*8 (W.D. Tenn. Mar. 4, 2019) (finding that Plaintiff's libel claim must fail because Defendant's statements in its position statement to the EEOC fall within the category of privileged communications). To make any other finding would irrefutably harm not only Brooks, but any other respondent going forward and would go against the public policy which must weigh "the public's interest in and need for a judicial process free from the fear of a suit for damages for defamation . . . based on statements made in the course of judicial or quasi-judicial proceedings." *Lambdin*, 559 S.W.2d at 792.

> ## 2. Even if the Purported Statements Are Not Covered by an Absolute Privilege, Plaintiff Did Not Suffer Any Harm

Even assuming the litigation privilege does not apply to Brooks' statements made in its EEOC position statement, Plaintiff's defamation action still fails on the merits. Specifically, Plaintiff has not alleged that Brooks' statements about Plaintiff's employment were publicized in such a way that led to any actual harm. (*See* Compl. generally). As already discussed above, Brooks' statements about Plaintiff's employment were made in Brooks' position statement, that it sent to the EEOC as part of the EEOC's investigation into Plaintiff's discrimination and retaliation claims. While Plaintiff alleges that the complained of statements had a direct impact on her employability and emotional and professional harm; she has not alleged who was made aware of Defendant's statements and filings that were provided only to the EEOC in a confidential

---

[18] This is consistent with how countless other district courts in the Sixth Circuit apply the absolute judicial privilege to statements made to the EEOC or other administrative quasi-judicial proceedings pre-litigation. *See Kettering v. Diamond-Triumph Auto Glass, Inc.*, 24 F. App'x 352, 358 (6th Cir. 2001) ("statements made to the [EEOC] are absolutely privileged" under Ohio law); *Jordan v. Wal-Mart Stores*, No. 7:05-212-KKC, 2005 U.S. Dist. LEXIS 63354, at \*4-5 (E.D. Ky. Oct. 17, 2005) (applying Kentucky's absolute judicial privilege to allegedly defamatory statements made in testimony in Kentucky unemployment hearing).

submission.  As the EEOC is the only entity identified as seeing the statement, Plaintiff cannot

credibly claim that she experienced actual injury, whether reputational, emotional, or professional.

Accordingly, Plaintiff's conclusory allegations are not sufficient to show actual injury for purposes

of a defamation claim and the Count must be dismissed with prejudice.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant respectfully requests the Court dismiss Plaintiff's

Complaint with prejudice.

Dated: December 23, 2024

Respectfully submitted,

**LITTLER MENDELSON, P.C.**

*/s/ Michael S. Moschel*
Michael S. Moschel (Bar No. 016826)
mmoschel@littler.com
333 Commerce Street, Suite 1450
Nashville, Tennessee 37201
Telephone: (615) 514-4124
Facsimile: (615) 250-4862

Ethan D. Balsam (*Admitted Pro Hac Vice*)
ebalsam@littler.com
Morgan Kinney (*Admitted Pro Hac Vice*)
mkinney@littler.com
815 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20006
Telephone: (202) 842-3400
Facsimile: (202) 841.0011

*Attorneys for Defendant*
*Brooks Automation US, LLC*

21

## CERTIFICATE OF SERVICE

I, Michael S. Moschel, hereby certify that on this 23rd day of December, 2024, the foregoing Motion to Dismiss and accompanying Memorandum in Support was filed electronically using the ECF system and served on the following individual via U.S. regular mail:

Jane Doe
201 Gillespie Drive
Apartment #8206
Franklin, Tennessee 37067

*Pro Se Plaintiff*

/s/ Michael S. Moschel
Michael S. Moschel